_____

| | | |
|---|---|---|
| YULON CLERK, | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | NO. 09-5121 |
| FIRST BANK OF DELAWARE d/b/a | : | |
| EASTERN SPECIALTY FINANCE, INC. | : | |
| d/b/a/ CHECK'N GO, | : | |
| **Defendants.** | : | |

_____

DuBOIS, J.                                                                         March 22, 2010

## M E M O R A N D U M

### I. INTRODUCTION

This is a usury action in which plaintiff asserts claims under the Pennsylvania Consumer Discount Company Act ("CDCA"), 7 P.S. § 6201, et seq., the Pennsylvania Loan Interest Protection Law ("LIPL"), 41 P.S. § 101, et seq., and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq. Plaintiff's claims arise out of a high-interest "payday loan" made to plaintiff by defendant indirectly through a loan marketer/servicer operating under the name Check'N Go. Presently before the Court is the Motion of Defendant First Bank of Delaware to Stay and Compel Arbitration of Plaintiff's Claims (Document No. 2, filed November 16, 2009), pursuant to an arbitration provision contained in plaintiff's loan agreement. For the reasons set forth below, the Court grants defendant's motion to compel arbitration, refers the dispute to arbitration pursuant to the arbitration agreement, and stays the proceedings until further order of the Court.

## II. BACKGROUND

In August 2005, plaintiff Yulon Clerk was facing a shortfall in meeting her living expenses – including mortgage payments, car payments, other bills, groceries, child care costs, and health care costs for one of her two children. (Declaration of Yulon Clerk, ¶¶ 11-17) (hereinafter "Clerk Decl.") As a result, she sought financial assistance in the form of a loan. (Clerk Decl. ¶¶ 18-19.) Unable to obtain a loan from a traditional lender, plaintiff turned to a "payday lender." (Clerk Decl. ¶ 20; Pl.'s Opp'n at 2.) On August 15, 2005, plaintiff entered into a loan agreement with defendant First Bank of Delaware, which serviced the loan through Eastern Specialty Finance, a loan marketer/servicer operating via storefront properties in Pennsylvania under the fictitious name "Check'N Go." (Stephen J. Schaller Declaration, ¶¶ 3, 4, 11) (hereinafter "Schaller Decl.") The five-page document, entitled Customer Installment Loan Agreement ("Loan Agreement"), provided for a loan with a principal of $600 and a finance charge of $468.22, to be paid over a four month period, for an annualized interest rate of 388.93 percent. (Loan Agreement at 1.) Plaintiff executed the Loan Agreement and received the loan amount of $600 at a Check'N Go store located in Darby Pennsylvania. (Schaller Decl. ¶ 11.)

The Loan Agreement contained a separately signed, two-page, single-spaced document, written in small and densely compacted font, entitled Waiver of Jury Trial and Arbitration Provision. (Loan Agreement at 4-5.) The arbitration provision calls for the arbitration of all legal disputes arising from the Loan Agreement, prohibits any class action against defendant, and selects the American Arbitration Association ("AAA"), the National Arbitration Forum ("NAF") or any other arbitrator mutually agreed upon by the parties to arbitrate any dispute. (Loan Agreement at 4.) According to the provision, the arbitration hearing is to be conducted in "the county of [plaintiff's]

residence, or within 30 miles of such county... or in such other place as... ordered by the arbitrator," and "pre-arbitration discovery may be limited." (Loan Agreement at 4.) The provision further states that all arbitration fees will be advanced by defendant, and that plaintiff need not reimburse defendant for the payment of said fees, regardless of whether or not she is successful in arbitration. (Loan Agreement at 4-5.) However, the provision requires that "throughout the arbitration, each party shall bear his or her own attorney's fees and expenses, such as witness and expert witness fees." (Loan Agreement at 4.) It goes on to state, "[i]f allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses." (Loan Agreement at 5.)

The Loan Agreement permitted plaintiff to rescind the loan without penalty by returning to Check'N Go within one (1) business day and returning the full loan amount of $600. (Loan Agreement at 1.) The arbitration provision also offered plaintiff the option of rejecting the agreement to arbitrate, by sending a letter to defendant within seven (7) days of the date of the Loan Agreement, with no other effect on the loan terms. (Loan Agreement at 4.)

By Complaint filed on September 23, 2009, in the Court of Common Pleas of Philadelphia, plaintiff asserted claims under, *inter alia*, CDCA, LIPL, and UTPCPL, alleging that she was charged usurious interest rates in relation to the above-described loan, in violation of Pennsylvania law. In the Complaint, plaintiff seeks certification of a class of similarly situated Pennsylvania residents who received similar "payday loans" from defendant at usurious interest rates. The Complaint includes a prayer for declaratory relief, fines, restitution in the form of treble damages for interest payments exceeding the statutory rate of six percent, restitution of all excess interest and charges collected by defendant, disgorgement of all profits obtained by defendant, and statutory damages of not less than

$100 per class member.

In a Notice of Removal filed on November 6, 2009, defendant removed the case to federal court, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). In the Notice, defendant alleged that "plaintiff and the members of the putative class are citizens of the Commonwealth of Pennsylvania," and that defendant is "chartered under the laws of the State of Delaware with its principal place of business in the State of Delaware" and is therefore a "Delaware citizen for CAFA purposes." (Def.'s Notice of Removal, ¶¶ 8-9.) The Notice also stated that defendant "made loans to Pennsylvania residents at rates that would not be permitted by Pennsylvania law, if applicable, to more than 100 individuals who meet the class definition set forth in... the Complaint." (Def.'s Notice of Removal, ¶ 11.) Finally, defendant averred in the Notice that "based on the relief requested as well as the number and amount of loans it made to the putative class, the amount in controversy exceeds $5,000,000." (Def.'s Notice of Removal, ¶ 12.) Plaintiff has not challenged any of these averments in her subsequent filings.

## III. JURISDICTION

Defendant asserts that jurisdiction lies in this Court pursuant to CAFA. "CAFA generally 'permits defendants to remove certain class actions to federal court if minimal diversity of citizenship exists.'" Schwartz v. Comcast Corp., No. 05-2340, 2006 WL 487915, at *2 (E.D. Pa. Feb. 28, 2006) (quoting Knudsen v. Liberty Mut. Ins. Co., 411 F.3d 805, 806 (7th Cir. 2005)). Specifically, CAFA provides that district courts shall have original jurisdiction of class actions in which: (1) the proposed plaintiff class contains 100 or more members, 28 U.S.C. § 1332(d)(5); (2) the aggregate amount in controversy exceeds five million dollars, 28 U.S.C. § 1332(d)(2); and (3) at least one member of the plaintiff class is diverse from at least one defendant, 28 U.S.C. §

1332(d)(2)(A-C). Defendant avers that it has met CAFA's numerosity, amount in controversy, and minimal diversity requirements, and plaintiff does not challenge jurisdiction. Therefore, for purposes of deciding this motion, the Court concludes that the requirements of § 1332(d) are satisfied. See Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009); Kahn v. Option One Mortgage Corp., No. 05-5268, 2006 WL 156942, at *1 n.1 (E.D Pa. Jan. 18, 2006); Jones v. Chubb Inst., No. 06-4937, 2007 WL 2892683, at *2 (D.N.J. Sept. 28, 2007).[1]

## IV. STANDARD OF REVIEW

Motions to compel arbitration are reviewed under the standard for summary judgment found in Federal Rule of Civil Procedure 56(c). Kaneff, 587 F.3d at 620; Bellevue Drug Co. v. Advance PCS, 333 F. Supp. 2d 318, 322 (E.D. Pa. 2004). Thus, if there is doubt as to whether an agreement to arbitrate exists, the matter should be submitted to a jury. Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." Id. The court must consider all evidence presented by the party opposing arbitration and construe all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Versarge v. Twp. of Clinton, 984 F.2d 1359, 1361 (3d Cir. 1993); Bellevue Drug, 333 F. Supp. 2d at 322.

---

[1] Because the Court concludes that it has jurisdiction over this action pursuant to CAFA, it is not necessary to reach defendant's argument that the Court also has federal question jurisdiction based on the preemption of plaintiff's state law claims by federal law. (Def.'s Notice of Removal at ¶¶ 14-20.)

## V. DISCUSSION

### A. Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-10, requires federal courts to enforce written agreements to arbitrate disputes. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001) ("[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements."); Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). The FAA evinces the "liberal federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000) ("The FAA establishes a strong federal policy in favor of compelling arbitration over litigation."). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.

Section 2 is the primary substantive provision of the FAA. Id. at 24. It provides, in relevant part:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "The effect of [Section 2] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp., 460 U.S. at 24.

However, a court cannot direct parties to arbitration unless the agreement to arbitrate is valid. Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 264 (3d Cir. 2003); Bellevue Drug, 333 F. Supp. 2d

at 323. "The federal policy encouraging recourse to arbitration requires federal courts to look first to the relevant state law of contracts... in deciding whether an arbitration agreement is valid under the FAA." Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 214 (3d Cir. 2003). "An agreement to arbitrate may be unenforceable based on a generally applicable contractual defense, such as unconscionability." Alexander, 341 F.3d at 264. The power of courts to declare arbitration provisions unconscionable does not contradict the FAA or its liberal policy favoring arbitration. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3d Cir. 1999).

Thus, "[a] motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (citations omitted). If it is determined that an enforceable arbitration agreement exists, and that the dispute falls within the scope of the agreement, the FAA requires the court to refer the matter to arbitration proceedings. 9 U.S.C. § 3. In making this determination, the Court "will not consider the merits of the claims giving rise to the controversy." Cronin v. CitiFinancial Servs., No. 08-1523, 2008 WL 2944869, at *2 (E.D. Pa. July 25, 2008), aff'd, No. 09-2310, 2009 WL 2873252 (3d Cir. Sept. 9, 2009) (citing PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)).

**B. Choice of Law**

As a threshold matter, the Court must determine which state law to apply in analyzing whether the arbitration provision is valid and enforceable.

### (1)  The Arbitration Provision and the Parties' Arguments

The Loan Agreement contains a choice of law clause which provides:

> This Loan Agreement is made not only under the federal laws applicable to
> state banks making loans to out-of-state borrowers but also under Delaware
> state law.  To the extent that such federal laws do not preempt state law, this
> Loan Agreement shall be governed and construed in accordance with the laws
> of Delaware.  To the broadest extent possible, any state law claims you may
> assert against us relating to this Loan Agreement, and any state law claims we
> may assert against you relating to this Loan Agreement, will be governed by
> the laws of Delaware.

(Loan Agreement at 2.)  The arbitration provision in the Loan Agreement also contains a choice of
law clause which provides, "[i]f a final non-appealable judgment of a court having jurisdiction over
this transaction finds, for any reason, that the FAA does not apply to this transaction, then our
agreement to arbitrate shall be governed by the arbitration law of the State of Delaware."  (Loan
Agreement at 5.)

Notwithstanding these choice of law clauses, plaintiff argues for the application of
Pennsylvania law in this case, citing the following factors: (1) plaintiff is a citizen of Pennsylvania
who applied for and obtained her loans at a Check'N Go store located in Pennsylvania, and deposited
the funds into her Pennsylvania bank account; (2) plaintiff repaid the majority of her loans from her
Pennsylvania bank account; (3) plaintiff seeks to represent other similarly situated Pennsylvania
citizens; (4) defendant has extensively engaged in lending throughout Pennsylvania via storefront
properties; (5) defendant has admitted to collecting in excess of five million dollars in fees and
interest from members of the putative class; and (6) defendant charged interest rates far above those
allowed by Pennsylvania law, thereby offending the public policy of Pennsylvania.  (Pl.'s Opp'n at
10-13.)

Defendant urges the Court to apply of Delaware law, citing the following factors: (1) the choice of law provisions in the Loan Agreement call for the application of Delaware law; (2) defendant is incorporated under the laws of Delaware; (3) defendant is headquartered in Delaware; and (4) there is therefore a reasonable relation between the transaction at issue and the state of Delaware; and (5) the choice of law provision selecting Delaware law should be enforced by the court. (Def.'s Br. in Support of Mot. at 9-10.)

### (2) Analysis

In an action based on diversity of citizenship jurisdiction, a federal court must apply the substantive law of the state in which it sits, including its choice of law rules. Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941). Applying Pennsylvania's choice of law rules, the Court must first determine whether there is "a true conflict between the application of Delaware law and Pennsylvania law." Kaneff, 587 F.3d at 621. The Third Circuit recently observed that the underlying difference in usury statutes between Delaware and Pennsylvania cannot be divorced from choice of law analysis. Id. at 622. The Court noted that the laws of Delaware and Pennsylvania differ greatly with respect to usury restrictions – Pennsylvania has a general usury statute prohibiting interest charges of over 6% a year, 41 P.S. § 201, while Delaware has no usury law. Kaneff, 587 F.3d at 622. Thus, there is a true conflict between the application of Delaware law and Pennsylvania law. Id.[2]

---

[2] Defendant argues in a footnote in its Supplemental Memorandum that there is no conflict between Pennsylvania and Delaware law, since federal law requires that Delaware law be applied in this case. (Def.'s Suppl. Mem. at 2 n.2.) While the Loan Agreement specifies the application of Delaware law, plaintiff has alleged violations of Pennsylvania law and this Court sits in Pennsylvania. Klaxon, 313 U.S. at 496. Therefore, the Court will apply Pennsylvania choice of law rules for the limited purpose of determining whether the contested arbitration provision is unconscionable. The Court will not consider the merits of the plaintiff's claims or

In a contract case, the law of the state specified in the contract will be applied unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which... would be the state of the applicable law in the absence of an effective choice of law by the parties.

Id. at 621-22 (quoting Restatement (Second) of Conflicts of Law § 187(2) (1971)). While the Court is satisfied that defendant has demonstrated a "substantial relationship" to the chosen state of Delaware, the analysis of the Kaneff court dictates the application of Pennsylvania law in this case pursuant to part (b) of § 187(2). In Kaneff, plaintiff, a Pennsylvania resident, traveled one mile into Delaware from the Pennsylvania border to secure a high interest rate $500 car title loan from a Delaware company. 587 F.3d at 618. The Third Circuit reasoned that Pennsylvania's antipathy to high interest rates, such as the 300 percent interest charged to the Pennsylvania plaintiff under the loan agreement at issue, represented a fundamental policy of the state. Id. at 624. The court also cited to a recent Pennsylvania Commonwealth Court decision which opined that "engaging in nonmortgage consumer lending to Pennsylvania residents by any means... constitutes engaging in such business in this Commonwealth..." Id. at 623 (quoting Cash America Net of Nevada, LLC v. Pennsylvania Dep't of Banking, 978 A,2d 1030 (2009)) (internal quotations omitted). Under these circumstances, the Kaneff court held that Pennsylvania had a "materially greater interest in the determination of whether the arbitration clause [was] unconscionable," and went on to apply Pennsylvania law. Id. at 624.

Kaneff and the instant case are factually similar – in both cases, Pennsylvania residents

_____

defendant's substantive defenses at this stage of the litigation. PaineWebber, 921 F.2d at 511.

-10-

secured loans from Delaware institutions at interest rates far exceeding the maximum lawful interest rates under Pennsylvania statute. The chief difference for choice of law purposes is that the plaintiff in Kaneff actually traveled into Delaware to secure her loan. Because defendant offered the challenged loan in this case to plaintiff through a loan marketer located in Pennsylvania, and because the loan was made to plaintiff within the state of Pennsylvania, the argument for the application of Pennsylvania law is stronger in this case than in Kaneff. As a result, the Court will apply the law of Pennsylvania in analyzing the validity of the instant arbitration provision. Id.; see also Fluke v. Cashcall, Inc., No. 08-5776, 2009 WL 1437593, at *5 (E.D. Pa. May 21, 2009).

### C. Availability of Chosen Arbitrators

#### (1) The Arbitration Provision / Background

The arbitration provision provides for the arbitrators to be used in case of a dispute, as follows:

> Regardless of who demands arbitration, you shall have the right to select either of the following organizations to administer arbitration: the American Arbitration Association... or the National Arbitration Forum.... However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond... within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days... of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization.

Plaintiff and defendant agree that the National Arbitration Forum ("NAF") is no longer available to arbitrate plaintiff's claims, since it ceased arbitrating disputes between consumers and businesses as of July 2009. (Pl.'s Opp'n at 4; Def.'s Reply at 2 n.1.) The parties are in disagreement regarding

whether the American Arbitration Association ("AAA") is available to arbitrate the instant dispute. AAA's description of its moratorium on accepting certain types of "consumer debt arbitration filings" is not a model of clarity. According to the AAA website, the organization will no longer arbitrate "individual case filings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute and the case involves a credit card bill or, the case involves a telecom bill or the case involves a consumer finance matter." AAA Notice on Consumer Debt Collection Arbitrations, http://www.adr.org/sp.asp?id=36427 (last visited Jan. 6, 2010). Based on this language, plaintiff submits that AAA is also unable to arbitrate the matter. (Pl.'s Opp'n at 5.) It is plaintiff's position that the parties in this case bargained for arbitration by either AAA or NAF, and that the arbitration of any dispute by one of the two organizations was a "material term" of the agreement. Since both of the organizations are now unavailable, plaintiff argues that the arbitration provision is no longer valid, and requests that the Court deny defendant's motion to compel arbitration on that ground. (Pl.'s Opp'n at 8-10.)

Defendant contests plaintiff's conclusion that AAA cannot arbitrate the dispute in the first instance. Furthermore, defendant argues that even if both organizations are unavailable the arbitration provision should nonetheless be enforced. Defendant submits that the proper remedy would be the appointment of an arbitrator by the Court pursuant to Section Five of the FAA. (Def.'s Reply at 4-6.)

(2)  **Analysis**

Section 5 of the FAA addresses the circumstances under which a court may appoint an arbitrator:

> If in the agreement provision be made for a method of naming or appointing an arbitrator... such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator... then upon the application of either party to the controversy the court shall designate and appoint an arbitrator...

9. U.S.C. § 5. Courts have interpreted this language, in an attempt to delineate the boundaries of this power of appointment. In general, Section 5 of the FAA permits a court to appoint a substitute arbitrator, where the chosen arbitrator is unavailable. See Carideo v. Dell, Inc., No. C06-1772JLR, 2009 WL 3485933, at *3 (W.D. Wash. Oct. 26, 2009); Ex parte Warren, 718 So.2d 45, 48 (Ala. 1998); Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 742 F. Supp. 1359, 1365 (N.D. Ill. 1990). The question of whether an arbitration provision is unenforceable based on the unavailability of a chosen arbitrator "turns on whether the selection of... arbitrator is integral to the [a]greement." Carideo, 2009 WL 3485933, at *3 (citing Reddam v. KPMG LLP, 457 F.3d 1054, 1060 (9th Cir. 2006)); see also Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000); Zechman, 742 F. Supp. at 1364; Grant v. Magnolia Manor-Greenwood, Inc., 678 S.E.2d 435, 439 (S.C. 2009). "At a minimum, for the selection of an arbitrator to be deemed integral, the arbitration clause must include an 'express statement' designating a specific arbitrator." Carideo, 2009 WL 3485933, at *4 (quoting Reddam, 457 F.3d at 1060).

Plaintiff argues that the instant arbitration provision should be invalidated for lack of the chosen arbitrators, largely based on the reasoning of In re Salomon Inc. S'holders' Derivative Litig., 68 F.3d 554 (2d Cir. 1995). In that case, the Second Circuit was faced with an arbitration provision which provided that "all disputes [between the parties] were to be arbitrated by the NYSE *and only the NYSE*, in accordance with the NYSE Constitution and rules." 68 F.3d 554, 557 (2d Cir. 1995)

(emphasis added).  When a dispute later arose under the agreement, the NYSE Board declined to serve as an arbitrator.  Id. at 556.  The defendant requested that the district court compel plaintiffs to arbitrate, and appoint a substitute arbitrator pursuant to Section 5.  Id. at 555-56.  It declined to do so, ruling that, since the parties had "contractually agreed that *only* the NYSE could arbitrate any disputes between them," the arbitration provision was unenforceable.  Id. at 559 (emphasis in original).  The court stressed that the "dominant intent of the parties was to arbitrate before the particular arbitrators," as opposed to other cases in which Section 5 was invoked where the parties "intended to arbitrate generally, rather than only if a certain forum was available."  Id. at 561.  See also Dover Ltd. v. A.B. Watley, Inc., No. 04 Civ. 7366, 2006 WL 2987054 (S.D.N.Y. Oct. 18, 2006) (holding that Section 5 was inapplicable where exclusive arbitral forum was specified by parties in arbitration provision, and that forum was no longer available).

Unlike the arbitration provision of In Re Salomon, and others which have been held unenforceable by courts due to the unavailability of a chosen arbitrator, the provision in this case fails to designate an *exclusive* arbitrator.  Instead, the provision offers the parties a choice between two listed arbitration associations and any other organization or individual that the parties agree upon.  In leaving open a range of potential arbitrators, the provision differs substantially from those provisions which courts have invalidated due to a chosen arbitrator's unavailability.  Since the selection of a specific arbitrator was not an integral part of the agreement between the parties, the Court will not deem the arbitration provision unenforceable based on the alleged unavailability of AAA and NAF.  See Carideo, 2009 WL 3485933, at *3-*4.  Because the Court would enforce the provision even assuming AAA was unavailable, it is unnecessary to parse the limits of AAA's

consumer debt collection arbitration moratorium at this time.[3]

### D. Unconscionability

#### (1) Legal Standard

Under Pennsylvania law, there must be both procedural and substantive unconscionability in order to void an arbitration provision or a contract in general. Harris, 183 F.3d at 181; Bellevue Drug, 333 F. Supp. 2d at 332 ("Pennsylvania law also recognizes that unconscionability has two elements: procedural and substantive."). "The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability." Harris, 183 F.3d at 181.

"Procedural unconscionability" describes the process by which the parties entered into the contract. Metalized Ceramics for Elec., Inc. v. Nat'l Ammonia Co., 663 A.2d 762, 767 (Pa. Super. Ct. 1995) (Olszewski, J., concurring). It has been defined by the Pennsylvania Supreme Court to mean the "absence of meaningful choice on the part of one of the parties." Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (Pa. 1981). Procedural unconscionability is generally found where the agreement is a contract of adhesion. Alexander, 341 F.3d at 265. A contract of adhesion is one prepared by a party with excessive bargaining power and presented to the other party on a "take-it-or-leave-it" basis. Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 276 (3d Cir. 2004); Rudolph v. Pennsylvania Blue Shield, 717 A.2d 508, 511-12 (Pa. 1998) (Nigro, J., concurring). Often the other party to the contract is told that the terms of the contract are non-negotiable. Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992). There may also be conditions which prevent the consumer from obtaining the product or services except by acquiescing

---

[3] It should be noted, however, that the court in Clerk v. Ace Cash Express, Inc. addressed the extent of AAA's moratorium, and concluded that AAA was available to arbitrate the similar claims in the matter before it. No. 09-05117, 2010 WL 364450, at *10 (E.D. Pa. Jan. 29, 2010).

to the contract. Dabney v. Option One Mortgage Corp., No. 00-5831, 2001 WL 410543, at *4 (E.D. Pa. Apr. 19, 2001); see also Denlinger, 608 A.2d at 1068 (refusing to find contract of adhesion where plaintiff was not an "exclusive supplier of rare or much-sought-after goods"). A contract of adhesion is not necessarily unenforceable, however; the party challenging it must also demonstrate substantive unconscionability. Parilla, 368 F.3d at 276.

"Substantive unconscionability" is found where the terms of an arbitration provision or contract "unreasonably favor" the party with the greater bargaining power. Witmer, 434 A.2d at 1228; Denlinger, 608 A.2d at 1068. Numerous factors may make an arbitration provision substantively unconscionable, including severe restrictions on discovery, Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 387-88 (6th Cir. 2005); high arbitration costs borne by one party, Spinetti, 324 F.3d at 216-17; limitations on remedies, Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 670-71 (6th Cir. 2003); and curtailed judicial review, Hooters of America, Inc. v. Phillips, 39 F. Supp. 2d 582, 614 (D.S.C. 1998). Essentially, an arbitration provision is substantively unconscionable if it "create[s] an arbitration procedure that favors one party over another." Johnson v. West Suburban Bank, 225 F.3d 366, 378 n. 5 (3d Cir. 2000).

### (2) Analysis

Before considering the merits of an unconscionability defense raised to avoid arbitration, the Court must determine whether the issue is one for a court or an arbitrator to resolve. Jenkins v. First American Cash Advance of Georgia., LLC, 400 F.3d 868, 876 (11th Cir. 2005). The Supreme Court has distinguished between challenges to the contract in general and challenges to the arbitration provision itself, most famously in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967), and more recently in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006). A

-16-

challenge to the validity of the contract as a whole must be decided by an arbitrator.  Buckeye, 546 U.S. at 449; Prima Paint, 388 U.S. at 404.  A challenge that is specific to the arbitration clause may be adjudicated by the Court.  Buckeye, 546 U.S. at 448-49; Prima Paint, 388 U.S. at 403-04; see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide.") (internal citations omitted).

While plaintiff's procedural unconscionability argument applies to the Loan Agreement as a whole, plaintiff's substantive unconscionability argument addressees only the arbitration provision. Because plaintiff's challenge is directed to the arbitration provision itself, the Court has the power to decide this issue.  Harris, 183 F.3d at 179; see also Barker v. Golf U.S.A., Inc., 154 F.3d 788, 791 (8th Cir. 1998) (concluding that, under Prima Paint, a challenge to an arbitration clause as unconscionable must be decided by the court); Benoay v. Prudential-Bache Sec., Inc., 805 F.2d 1437, 1441 (11th Cir. 1986) ("If... [plaintiff] has alleged fraud, duress, or unconscionability with respect to the arbitration clause itself, then judicial consideration of these issues is mandated before arbitration of the state claims can be compelled.").

### (a) Procedural Unconscionability

According to plaintiff, the Loan Agreement and arbitration provision are procedurally unconscionable for the following reasons: (1) as a large and sophisticated corporation, defendant was in a superior bargaining position vis-a-vis plaintiff; (2) the Loan Agreement and arbitration provision were drafted entirely by defendant; (3) the consequences of the arbitration provision were not explained to plaintiff when she signed it; and (4) plaintiff was in dire financial straights and had no choice but to accept the terms of the contract in order to secure a loan.  (Pl.'s Opp'n at 14-16.)

-17-

Defendant responds that the Loan Agreement is not procedurally unconscionable because the agreement allowed plaintiff to rescind her loan within one business day and to reject the terms of the arbitration provision within seven days. The contract is not one of adhesion, defendant argues, because it was not presented to plaintiff on a "take-it-or-leave-it" basis. (Def.'s Suppl. Mem. at 3.)

It is undisputed that plaintiff was an unsophisticated consumer in difficult financial circumstances, seeking cash assistance but unable to obtain a loan from traditional lenders. Defendant, on the other hand, is a large banking institution which regularly engages in complicated financial and legal transactions, and therefore enjoyed a superior bargaining position. Defendant drafted the agreement and presented it to plaintiff, requiring her to accept all of its terms in order to secure a payday loan. The arbitration provision in the agreement was two pages long, in small, condensed, single-spaced print, and was not explained to plaintiff.[4] Thus, the Loan Agreement and arbitration provision have all of the above-described hallmarks of a "contract of adhesion" – excessive bargaining power on one side and lack of meaningful choice on the other, conditions preventing the consumer from obtaining a service except by acquiescing to the contract, and non-negotiability of the terms of the agreement. Witmer, 434 A.2d at 1228; Parilla, 368 F.3d at 276; Denlinger, 608 A.2d at 1068; Dabney, 2001 WL 410543, at *4.

Defendant correctly points out that the Loan Agreement contained terms which conferred upon plaintiff the unilateral right to rescind the loan within one business day of the execution of the Loan Agreement, or to reject the arbitration provision by notice postmarked within seven days.

---

[4] The Court notes that the agreement to waive jury trial and arbitrate is mentioned in the Loan Agreement, and that the arbitration provision itself contains several lines in capital letters relating to the waiver of jury trial rights. These facts cannot cure the procedural unconscionability evidenced by the other circumstances surrounding the transaction, as outlined in this section of the Memorandum.

(Def.'s Suppl. Mem. at 3.)  Several courts have declined to find arbitration provisions procedurally unconscionable where an "opt out clause" was included in the arbitration provision.  See e.g., Clerk v. Ace Cash Express, Inc., No. 09-05117, 2010 WL 364450, at *8-10 (E.D. Pa. Jan. 29, 2010) (arbitration provision was not procedurally unconscionable, based on inclusion of 30-day opt out clause); Fluke, 2009 WL 1437593, at *8 (arbitration provision containing 60-day opt out clause was not unconscionable); Martin v. Delaware Title Loans, Inc., No. 08-3322, 2008 WL 4443021, at *4 (E.D. Pa. Oct. 1, 2008) (arbitration provision containing 15-day opt out clause was not procedurally unconscionable); Guadagno v. E*Trade Bank, 592 F. Supp. 2d 1263, 1270 (C.D. Cal. 2008) (arbitration provision containing class action waiver, but providing for 60-day opt out period, was not unconscionable); Honig v. Comcast of Georgia I, LLC, 537 F. Supp. 2d 1277, 1289 (N.D. Ga. 2008) (same, but 30-day opt out period); Sanders v. Comcast Cable Holdings, LLC, No. 3:07-CV-918-J-33HTS, 2008 WL 150479, at *7 (M.D. Fla. Jan. 14, 2008) (same, but 30-day opt out period).

However, the Court agrees with plaintiff that the presence of an opt out clause does not automatically spare the arbitration provision from a finding of procedural unconscionability.  See Gentry v. Superior Court, 165 P.3d 556 (Cal. 2007) (arbitration provision in employment contract containing 30-day opt out term was nonetheless procedurally unconscionable); Duran v. Discover Bank, No. B203338, 2009 WL 1709569 (Cal. Ct. App. June 19, 2009) (arbitration provision in consumer credit card agreement containing 30-day opt out clause was procedurally unconscionable). The ability to rescind the loan within one day is meaningless to an individual in plaintiff's position, who would not have resorted to a payday loan in the first place if she was not in need of the cash assistance or able to obtain such assistance elsewhere.  Moreover, the opt out clause was written in

small, un-bolded print, indistinguishable from the remainder of the provision, and there is no evidence that it was pointed out or explained in any way to plaintiff.

Finally, this Court is not aware of any authority supporting the proposition that such a short time frame protects an otherwise adhesive consumer arbitration agreement from a finding of procedural unconscionability. Unlike the arbitration provisions in Ace Cash Express, Fluke, and Martin – other Eastern District of Pennsylvania cases addressing the effect of opt out clauses on procedural unconscionability – the arbitration provision in this case provided for an opt out period of only seven days. Similar clauses in Ace Cash Express and Fluke called for longer periods of 30 and 60 days, respectively. Ace Cash Express, 2010 WL 364450, at *8-10; Fluke, 2009 WL 1437593, at *8. And while the Martin court found that an arbitration provision containing a 15-day opt out clause was not procedurally unconscionable, the court made clear that the opt out clause was written in "bold-face print" and that the plaintiff had not alleged "the use of fine print... in the agreement." Martin, 2008 WL 4443021, at *4. In light of the relatively short opt out period in this case, and the other clear signs of a contract of adhesion described above, the Court concludes that the totality of the facts support a finding of procedural unconscionability, notwithstanding the opt out clause.

Having determined that the Loan Agreement and arbitration provision are procedurally unconscionable, the Court must next analyze whether the arbitration provision is substantively unconscionable. See Parilla, 368 F.3d at 276.

### (b)  Substantive Unconscionability

Plaintiff argues that the arbitration provision is substantively unconscionable in that: (1) the limitation on pre-arbitration discovery in the provision restricts "plaintiff's judicial recourse"; (2) the provision provides that an arbitrator *may* award attorney's fees and expenses, but does not

*require* the arbitrator to do so even if directed by statute; (3) the class action waiver in the provision effectively insulates defendant from liability; and (4) the costs of arbitration are sufficiently prohibitive so as to preclude plaintiff from pursuing any remedy. (Pl.'s Opp'n at 17-23.) Defendant responds that the provision is not substantively unconscionable for the following reasons: (1) defendant is responsible for all arbitration fees and expenses; (2) plaintiff retains the right to obtain any relief to which she would be entitled in a judicial proceeding, including attorneys' fees; (3) the arbitration presumptively is to take place close to plaintiff's home; (4) plaintiff has the right to choose the arbitration organization; and (5) the provision preserves plaintiff's right to initiate an action against defendant in a small claims tribunal. (Def.'s Br. in Supp. of Mot. at 11-12.)

### (i) Discovery Limitation

Plaintiff argues that the clause in the arbitration provision which states "[p]re-arbitration discovery may be limited," limits plaintiff's judicial recourse, and is therefore substantively unconscionable. Plaintiff cites no case law to support her position on this point, and does not develop the argument in her brief, aside from stating that "depending upon what arbitration rules and procedure apply, there *may be* severe restrictions on the extent and scope of discovery." (Pl.'s Opp'n at 21) (emphasis added).

In Gilmer v. Interstate/Johnson Lane Corp., the Supreme Court held that limitations on discovery do not necessarily render an arbitration provision invalid. 500 U.S. 20, 31 (1991). As in Gilmer, plaintiff has made no showing in this case that the discovery clause will "prove insufficient to allow [plaintiff] a fair opportunity to present [her claim]." Id. The clause in the instant arbitration provision simply allows for some limitation on discovery, depending on the rules and procedures of the chosen arbitrator. Since no arbitrator has been selected, plaintiff cannot point to any particular

discovery limitation which would impede her ability to assert legal claims. Furthermore, the provision is discretionary, and does not necessarily mandate *any* limitation on discovery. Thus, the general discovery clause in the arbitration provision does not make the provision substantively unconscionable.

### (ii) Discretion in Award of Fees/Damages

Plaintiff further argues that the arbitration provision is substantively unconscionable because it gives an arbitrator discretion in the awarding of attorneys' fees and damages. Specifically, the clause states, "If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses." Plaintiff asserts that in the instant case, where there is a statute requiring the mandatory award of damages, the discretion to award damages and fees described in the provision is incompatible with the statute and "unreasonably favors defendant." (Pl.'s Opp'n at 19.) Again, plaintiff's argument is not well developed, and lacks the support of any case law.

The contested language in the arbitration provision appears to contemplate statutes which allow, but do not require, the award of damages or fees. Importantly, nothing in the provision prevents an arbitrator from awarding fees where they are required by statute, or permits an arbitrator to refuse to award damages or fees where they are required by statute. Finally, as defendant points out, the provision requires the arbitrator to apply relevant substantive law, which would compel the arbitrator to award attorney's fees to the extent that they are mandatory under a statute. (Def.'s Suppl. Mem. at 8.) Thus, the term permitting the arbitrator to award such fees does not make the provision substantively unconscionable.

### (iii)  Class Action Waiver and Prohibitive Cost

Plaintiff's most forceful argument is that the class action waiver contained in the arbitration provision renders the provision substantively unconscionable.  Plaintiff's individual claim involves $468.22 in allegedly illegal interest (amounting to an effective interest rate of 388.93 percent on her $600 loan), along with potential treble damages and other statutory damages.  With such limited recovery available, plaintiff submits that the costs associated with arbitration of her individual claim would operate to preclude her from pursuing a remedy.  Plaintiff urges that the class action waiver makes a claim against defendant prohibitively expensive for any individual plaintiff, and thereby insulates defendant from liability for unlawful conduct.  (Pl.'s Opp'n at 17-19, 22-23.)

As the Third Circuit has recognized, there is some tension in Circuit precedent relating to the unconscionability of class action waivers in arbitration provisions under Pennsylvania law.  See Cronin v. CitiFinancial Servs., Inc., No. 09-2310, 2009 WL 2873252, at *3 (3d Cir. Sept. 9, 2009).[5] As a result, a brief history of the treatment of such waivers under Pennsylvania and Third Circuit precedent is warranted.

A line of Pennsylvania Superior Court cases has held that class action waivers in arbitration provisions are unconscionable where the "costs associated with arbitrating a single claim effectively deny consumer redress...."  Thibodeau v. Comcast Corp., 912 A.2d 874, 883 (Pa. Super. Ct. 2006); McNulty v. H&R Block, Inc., 843 A.2d 1267 (Pa. Super. Ct. 2004); Lytle v. CitiFinancial Servs., Inc., 810 A.2d 643 (Pa. Super. Ct. 2002).  Thibodeau and McNulty each involved very small damages claims – $9.60 a month and approximately $30, respectively.

---

[5] This unpublished opinion is not precedential pursuant to § 5.7 of the Internal Operating Procedures of the Third Circuit, but the Court finds it instructive.

In Gay v. CreditInform, the Third Circuit addressed the applicability of these Pennsylvania cases in discussing the validity of a class action waiver in an arbitration provision. 511 F.3d 369 (3d Cir. 2007). The Gay court opined that Pennsylvania state case law was preempted by the FAA, and that the Superior Court rulings could not be relied upon to prevent the enforcement of arbitration provisions containing class action waivers. Id. at 392-94. The court then concluded that, if it were to analyze the challenged class action waiver under Pennsylvania law, it would find the waiver enforceable and compel arbitration. Id. at 394.[6]

In Homa v. American Express Co., the Third Circuit again analyzed a class action waiver in an arbitration provision, this time under New Jersey law. 558 F.3d 225 (3d Cir. 2009). The Homa court, stating that Gay's discussion of Pennsylvania case law was dicta, distinguished Gay and held that New Jersey public policy prohibits class action waivers where "the claims at issue are of such a low value as effectively to preclude relief if decided individually...." Id. at 233. The court concluded that, given the small amount of damages at issue in the case, the challenged class action waiver was unconscionable and unenforceable under New Jersey law. Id.

In Cronin, a non-precedential opinion, the Third Circuit again analyzed Pennsylvania law on the subject, commenting that "Pennsylvania does not deem all arbitration waivers per se unconscionable." 2009 WL 2873252, at *3. Rather, the critical issue is "whether the particular class action waiver effectively ensures that a defendant will never face liability for wrongdoing." Id. at *3; see also Hopkins v. NewDay Fin., No. 07-3679, 2008 WL 2654635, at *3 (E.D. Pa. June 30, 2008) ("limiting the use of the class action vehicle, if it raises costs to the point of effectively

---

[6] The court based its ultimate ruling on Virginia state law, under which it concluded that class action waivers in arbitration provisions were valid and enforceable. Gay, 511 F.3d at 391-92.

preventing individual redress, is substantively unconscionable"). However, the Cronin court concluded that plaintiff's "ability to seek actual and punitive damages, costs and attorneys' fees rendered his individual... claim sufficiently valuable so that [defendant] was not completely insulated from liability, even in light of [plaintiff's] contractual waiver of the right to pursue a class action." 2009 WL 2873252, at *4. Therefore, the court held that the class action waiver was not unconscionable under Pennsylvania law, and that the arbitration provision was enforceable. Id.

The Third Circuit most recently addressed the effect of a class action waiver in an arbitration provision in Kaneff, decided in November 2009. 587 F.3d at 620. Kaneff involved a Pennsylvania plaintiff who asserted usury claims against a Delaware business which charged her an effective annual interest rate of approximately 300 percent on a $550 car title loan. Id. at 618. The loan agreement contained an arbitration provision which compelled the arbitration of disputes arising out of the transaction. Id. at 619. The provision required plaintiff to pay a $125 arbitration filing fee, after which defendant agreed to pay all remaining arbitration costs, and placed responsibility on each party to cover their own expenses for attorneys, experts, and witnesses. Id. at 620. The provision also included a waiver of the right to participate in any class action. Id. Excepting the term requiring the parties to "be responsible for their own expenses," which the court severed as unconscionable, the court held that the arbitration provision and incorporated class action waiver were not unconscionable under Pennsylvania law. Id. at 624-25.

While not entirely consistent, Third Circuit precedent appears to establish that: (1) class action waivers in arbitration provisions are not *per se* unconscionable under Pennsylvania law, and (2) such waivers are unconscionable only when they prohibit individual consumers from obtaining relief due to prohibitive cost, and thereby insulate a defendant from liability. This Court is

sympathetic to plaintiff's position that the hundreds of dollars at stake in this case may be insufficient to permit similarly situated plaintiffs to pursue claims against defendant. Indeed, defendant's admission that it made payday loans at such high interest rates to over 100 individuals, confirms the existence of other aggrieved parties whose rights might be vindicated in the class action suit that plaintiff seeks. Moreover, in the context of payday loan agreements, other jurisdictions have invalidated similar arbitration provisions as unconscionable based on class action waivers. <u>See</u> <u>Cooper v. QC Fin. Servs., Inc.</u>, 503 F. Supp. 2d 1266 (D. Ariz. 2007) ("[class action waiver] provision insulates Defendant from the spectre of a ruling which would have precedential effect and value, such as application of collateral estoppel, on Defendant's business practice as a whole"); <u>Muhammad v. County Bank of Rehoboth Beach</u>, 912 A.2d 88 (N.J. 2006) ("class action waivers can functionally exculpate wrongful conduct by reducing the possibility of attracting competent counsel to advance the cause of action"); <u>Woods v, QC Fin. Servs., Inc.</u>, 280 S.W.3d 90 (Mo. Ct. App. 2008).

Nonetheless, the Court is bound to follow Third Circuit precedent, and the similarity between this loan and the loan at issue in <u>Kaneff</u> is inescapable. The instant loan and the <u>Kaneff</u> loan involved similar money amounts – $600 and $550, respectively – and similar interest rates – 389 percent and 300 percent, respectively. When accounting for the $468 payment of interest and the treble damages prayed for in the Complaint, plaintiff in this case will likely seek a greater recovery than the $845 in treble damages sought by the <u>Kaneff</u> plaintiff. <u>See Kaneff v. Delaware Title Loans, Inc.</u>, No. 06-CV-4703, Memorandum and Order (E.D. Pa. Mar. 6, 2007). Furthermore, the potential recovery in this case exceeds the small damage amounts contemplated in the Pennsylvania state cases where class action waivers were found unconscionable. <u>See Thibodeau</u>, 912 A.2d 874;

McNulty, 843 A.2d 1267; see also O'Shea v. Direct Fin. Solutions, No. 07-1881, 2007 WL 4373038, at *4-*5 (E.D. Pa. Dec. 5, 2007) (holding that class action waiver in arbitration provision of payday loan agreement was not substantively unconscionable, where alleged damages were approximately $300 and agreement provided for payment of all arbitration fees by defendant).

When compared to the Kaneff agreement, the instant arbitration provision also affords more financial leeway to plaintiff in arbitration. Where the Kaneff plaintiff was required to pay a $125 arbitration filing fee, the provision in this case calls for the payment of all arbitration fees by defendant. The instant provision is also more favorable to plaintiff insofar as it preserves plaintiff's right to initiate an action against defendant in a small claims tribunal, and permits plaintiff to obtain any relief to which she would be entitled in a judicial proceeding.

The clause requiring that "throughout the arbitration, each party [ ] bear his or her own attorneys' fees and expenses" is also distinguishable from the objectionable attorneys' fees clause in the Kaneff agreement. The Kaneff court's severance of the attorneys' fees clause was based on the Green Tree line of cases, which hold that an arbitration agreement may be invalidated on the ground that "arbitration would be prohibitively expensive." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92 (2000). In such cases, the party seeking invalidation of the agreement "bears the burden of showing the likelihood of incurring such costs." Id. The Third Circuit has relied on the reasoning of Green Tree to sever clauses which, in the context of statutory claims permitting the recovery of attorneys' fees and costs, nonetheless require each party to bear such costs. See Spinetti, 324 F.3d at 217; Parilla, 368 F.3d at 278-79. To the extent that plaintiff relies on these cases to support her unconscionability argument, her reliance is misplaced. Although the arbitration provision in this case states that each party will be responsible for attorneys' fees *throughout the arbitration itself*,

unlike the arbitration provisions in <u>Spinetti</u>, <u>Parilla</u>, and <u>Kaneff</u>, the instant provision allows plaintiff to collect attorneys' fees and punitive damages under applicable statutes if plaintiff is successful in arbitration.

Thus, under Third Circuit and Pennsylvania case law, it cannot be said that the instant class action waiver operates to prohibit plaintiff, or other individual consumers, from obtaining relief. <u>Kaneff</u> mandates that class action waivers such as the one involved in this case be upheld in the context of the claims presented by plaintiff. With arbitration fees and costs covered by defendant and the potential for recovery of attorneys' fees preserved, plaintiff is not deprived of the right to seek individual redress for her claims. As a result, the Court concludes that the class action waiver is not substantively unconscionable.

### (3) Arbitration Provision is Enforceable

Because the Court concludes that the arbitration provision is not substantively unconscionable, the provision is valid and enforceable. The Court must next determine whether plaintiff's dispute falls within the scope of the agreement. <u>Trippe</u>, 401 F.3d at 532.

### E. Scope of the Agreement

Once it is determined that an enforceable arbitration agreement exists, a court must examine whether the dispute giving rise to legal claims falls within the scope of the agreement. <u>Id.</u> In this case, neither party argues that the dispute is outside of the purview of the arbitration provision. The provision calls for the arbitration of "all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Loan Agreement." (Loan Agreement at 4.) It is clear that plaintiff's claims of usurious interest rates relate directly to Loan Agreement, which specifies a 389 percent interest rate on its face.

Thus, having determined that the arbitration provision is valid and enforceable, and that the instant dispute falls within the scope of that provision, the FAA requires the Court to refer the matter to arbitration. 9 U.S.C. § 3.

## VI.  CONCLUSION

For the forgoing reasons, the Court grants the Motion of Defendant First Bank of Delaware to Stay and Compel Arbitration of Plaintiff's Claims, refers the dispute to arbitration pursuant to the arbitration provision of the Loan Agreement, and stays proceedings in this Court until further order of the Court.

An appropriate order follows.